**Kwardua VANDERPUYE,**
**Plaintiff–Appellant,**

v.

**Louise COHEN, sued in her individual capacity, Andrew Goodman, sued in his individual capacity, Lawrence Wolf, sued in his individual capacity and New York City Department of Health, Defendants–Appellees.**

No. 03–7529.

United States Court of Appeals,
Second Circuit.

March 18, 2004.

Stephen Bergstein (Christopher D. Watkins, on the brief), Thornton, Bergstein & Ullrich, Chester, NY, for Appellant.

Ronald E. Sternberg (Leonard Koerner and Kay Edwards, Michael A. Cardozo, Corporation Counsel of the City of New York, on the brief), New York, NY, for Appellees, of counsel.

Present: SOTOMAYOR, HKATZMANN, and KEITH,* Circuit Judges.

***SUMMARY ORDER***

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern Dis-

---

* The Honorable Damon J. Keith, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

trict of New York (Jones, J.), it is hereby ORDERED, ADJUDGED AND DE-CREED that the judgment is AF-FIRMED.

Plaintiff-appellant Kwardua Vanderpuye ("Vanderpuye") appeals from a judgment of the United States District Court for the Southern District of New York (Jones, J.) granting defendants summary judgment on her claim that she was terminated in violation of her First Amendment rights for speaking to co-workers about, *inter alia*, defendant Louise Cohen's potential conflict of interest in evaluating bids for municipal contracts. On appeal, plaintiff argues that the district court erred as a matter of law in concluding that under the *Pickering* balancing test, *see Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the value of her speech was outweighed by the government's prediction of disruption that would result. We review the district court's grant of summary judgment *de novo, see Gorman–Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 551 (2d Cir.2001), and "resolve all ambiguities and draw all inferences in favor of" Vanderpuye, *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001).

Familiarity with the facts and defendants' respective positions within City government is presumed. In this suit, Vanderpuye claims that her discussions with various co-workers about defendant Louise Cohen's potential conflict of interest in the bidding process for a municipal contract were protected by the First Amendment, and that this speech impermissibly played a substantial role in defendants' decision to terminate Vanderpuye after only four months.[1]

A public employee alleging First Amendment retaliation "must initially demonstrate that: (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the [adverse employment action]." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir.2003) (multiple citations and quotation marks omitted). For purposes of this appeal, we assume that the district court was correct in holding that Vanderpuye satisfied this burden by proffering evidence that she was terminated not long after she spoke to defendants about an issue touching upon the integrity of the government contracting process.[2]

Even where a plaintiff can establish that she would not have suffered the adverse employment action but for her protected speech, however, the government employer may justify its action "if: (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in

---

1. Although Vanderpuye's brief on appeal contends that her First Amendment retaliation claim is predicated on various other speech made in the course of her employment, we agree with the district court that Vanderpuye stated unambiguously in her deposition that only her speech with respect to Cohen's potential conflict played a substantial role in her termination. We therefore limit our consideration to only Vanderpuye's speech that touched upon Cohen's potential conflict.

2. Because we find that defendants are entitled to summary judgment on the grounds stated herein, we need not address defendants' argument on appeal that they "would have taken the same adverse employment action 'even in the absence of the protected conduct.'" *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

retaliation for the employee's speech, but because of the potential for disruption." *Johnson*, 342 F.3d at 114 (citing *Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir.1995)). It is the second factor of this step that "forms the crux of what is commonly referred to as the *Pickering* balancing test." *Id.*

We agree with the district court that in the circumstances of this case, the *Pickering* balance tips in favor of defendants. First, even though we assume that Vanderpuye's statements were of public concern, we agree with the district court that given "the nature of" Vanderpuye's comments, her "First Amendment interests were entitled to comparatively little weight." *Giacalone v. Abrams*, 850 F.2d 79, 86 (2d Cir.1988). When Vanderpuye learned that Cohen was a former employee of a subcontractor included on a bid that Cohen was to evaluate, she had conversations with various co-workers about the propriety of Cohen continuing to evaluate the bids. Cohen was recused from considering the bid with which she had a potential conflict, but she continued to evaluate other bids. Although Vanderpuye contends that she suspected that Cohen was improperly "steering" the bidding process toward her former employer,[3] her "[a]bstract concern about a particular subject carries no weight if [she chose] not to articulate it." *Id.* at 87. As the district court correctly found, Vanderpuye's speech instead was focused on her interpretation of the extent of Cohen's conflict and how that conflict should be handled, and the record reveals that upon these subjects "[t]here was room for legitimate difference of opinion." *Id.* at 87.

Rather than make any outright "accusations as to any serious matters of potential improperly," *Frank v. Relin*, 1 F.3d 1317, 1329 (2d Cir.1993), Vanderpuye spoke with other municipal employees largely about the propriety of her own efforts to frustrate what she alone saw as Cohen's attempts to manipulate the process. Thus, for example, when Cohen requested that Vanderpuye appoint one of two employees with particular knowledge of the agency's needs to .replace her on the evaluation team, Vanderpuye refused and, after telling Cohen she should not interfere in the process, appointed her own choice. Vanderpuye then spoke with defendant Larry Wolf about whether she was obligated to tell Cohen the name of her replacement. Further, when Vanderpuye perceived that Cohen was declining to hand over her teams' completed evaluation forms in order to manipulate the outcome, Vanderpuye told Cohen and others that she would not comply with Cohen's request that she sign off on a draft notice of the winners of the contract.

Under these circumstances, even assuming that Vanderpuye's speech was a motivating factor in her termination, we find that defendants' prediction that Vanderpuye's speech would cause disruption was reasonable, *see Sheppard v. Beerman*, 317 F.3d 351, 355 (2d Cir.2003), and that the potential for disruption outweighed the value of Vanderpuye's speech, *see Connick v. Myers*, 461 U.S. 138, 152, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Although Vanderpuye argues that it was error for the district court to consider her acts of insubordination in assessing the potential disruptiveness of her speech, we find the potential for disruption attributable to her speech was no doubt heightened by "the context in which the dispute arose." *Id.* at 153. Finally, contrary to Vanderpuye's argument on appeal, we do not think that

---

**3.** We note that the bidder with which Cohen had a potential conflict was not awarded a municipal contract.

**6**

a reasonable inference that Cohen fired Vanderpuye because of her speech rather than the potential for disruption could be drawn merely from the fact that Cohen dealt with Vanderpuye hostilely and angrily when reprimanding her for her insubordination. *See Morris,* 196 F.3d at 111 ("Plaintiffs may not rely on conclusory assertions of retaliatory motive, but must offer instead some tangible proof to demonstrate that their version of what occurred was not imaginary.").

For the foregoing reasons, the judgment is AFFIRMED.